UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR JOSEPH TABOURNE, CARLA TABOURNE<br><br>          Plaintiff (s)<br><br>          v.<br><br>JEFFREY TABOURNE, CHRISTOPHER TABOURNE, MOUNTAINSIDE PSYCHIATRIC HOSPITAL (MONTCLAIR NEW JERSEY), SPRING CYPRESS ASSISTED LIVING AND MEMORY CARE, JOHN DOES 1-10, VERONICA JENSON,R.N. AKIA<br><br>          Defendant (s) | CIVIL ACTION<br>DOCKET NO:<br><br><br><u>CIVIL ACTION</u><br><br><u>VERIFIED</u><br>COMPLAINT AND JURY DEMAND REQUESTS FOR IMMEDIATE DECLARATORY  RESTRAINT AND INJUNCTIVE RELIEF |

Dr Joseph Tabourne domiciled in West Orange, New Jersey. Carla Tabourne domiciled in Minneapolis Minnesota by way of Complaint says:

<u>JURISDICTION</u>

1. This suit arises under the United States Constitution and the laws of United States and is brought pursuant to the American with Disability Act (ADA. Title 3) Accommodation and 42 USCA 1981, 1982, 1983, 1985, 1986, 1988; together with pendent state claims.

2. The Courts have jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. § 1331, as an action arising out of the Constitution of United States and 28 U.S.C. § 1343 (a) (3) to redress the deprivation under the color of state law, of rights, privileges and liberties secured by the Constitution of the United

States' and over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

3. The Court has authority to grant declaratory and injunctive relief pursuant to the declaratory judgment act, 28 U.S.C. § 2201, et. seq.

4. The Court has authority to award costs and attorney's fees pursuant to 42 U.S.C. - 1988 and Title VII as well as ADA and N.J.S.A. 10:6-2(2) and N.J.S.A. 10:5-13, 27.

5. Venue is properly laid in the District of New Jersey, pursuant to 28 U.S.C. 1391 (b), because Plaintiff JOSEPH is domiciled in in New Jersey and defendants Mountainside Psychiatric Hospital and its staff John Doe defendants 1 to 5 are employees agents of said Mountainside hospital. New Jersey is also the situs from which plaintiff Joseph was unlawfully removed against his will by defendants who agreed and conspired that while Joseph was in Mountainside hospital, he was not allowed to communicate with his wife Carla and his lawyer Eldridge Hawkins. This is where the first step in the unlawful agreement to transport him against his will by air Medovac to carry Joseph to Spring Cypress , Texas was developed and given agreement by defendants. Defendant Jeffrey Tabourne is domiciled and resides in Cypress , Texas. Defendant Christopher Tabourne has his domicile in Missouri .

6. The damage amount in dispute exceeds $10,000,000.

**WHEREFORE,** Plaintiff (s) requests judgment for monetary damages, both past and future, both compensatory and punitive with costs, interest, and attorney's fees.

## **PARTIES**

1. Mountainside Hospital, Montclair and its employees agents John Does 1-5 (presently identities unknown) are Places of Public Accomodations and a hospital which is an entity allowed to be liable under N.J.S.A. 10:1-2 and N.J.S.A. 10:5-4 and N.J.S.A. 10:12 (f)as well as N.J.S.A. 10:6-2 (c)and ADA and  and was created under the laws of New Jersey and at all times operated through its agents employees. VERONICA JENSON IS THE NURSE AT MOUTAIN SIDE HOSPITAL , NJ WHO COORDINATED WITH R.N. AKIA AGENT EMPLOYEE OF DEFENDANT SPRING CYPRESS , TEXAS TO HAVE PLAINTIFF TRANSPORTED OUT OF STATE TO TEXAS AGAINST JOSEPH'S WILL ;

2. Defendants, John Does 1-5 (presently identities unknown) and Head Doe 1 (present identity unknown), as employee agents of Mountainside Psychiatric hospital were acting the Mountainside Psychiatric hospital.

3. Defendant Jeffrey Tabourne and Christopher Tabourne are the sons of Dr. Joseph Tabourne who were given certain Powers of Attorney and Advanced Directive to act on his behalf with reference to health matters in compliance with his desires. Said defendants violated said trust placed in them when against his will they  cut off his  communications with his wife and friend and lawyer Eldridge Hawkins in order for them to not be stopped in their unlawful plan to remove Joseph from the State of New Jersey against his will and to be able to control PLAINTIFF Joseph's ASSETS .

4. Defendant Spring Cypress and its agents employee are also Places of Public Accommodation subject to laws as stated in this written complaint. Defendants ,John Does (6-10) and Head Doe (2) conspired and agreed with defendants Jeffrey and Christopher in their plans

with defendants Mountainside and their employees Does 1-5 to maintain Joseph incommunicado status until Joseph could be "educated" to be satisfied with his present circumstances.

5. Head Doe (1) is the executive officer of Defendant Moutainside who made the decision to comply with defendants Jeffrey and Chris to maintain Joseph incommunicado to the outside world and his wife and friend and lawyer Eldridge Hawkins so he could be unlawfully removed against his will by Medovac to spring Cypress in Texas. Head Doe (2) is the executive officer who made the decision on behalf of Defendant , Spring Cypress to agree to receive Joseph Tabourne from New Jersey and maintain his incommunicado status from Joseph's wife and lawyer in agreement with the other defendants

6. All individual Defendant's known and unknown are joined officially and individually.

7. All individual and institutional defendants have exceeded any and all of their alleged authority over plaintiff by engaging in acts in furtherance of the unlawful conspiracy with Jeffrey and Christopher to disallow Joseph to communicate with his wife and his friend and lawyer Eldridge Hawkins.

**WHEREFORE,** plaintiff requests judgment for monetary damages, both past and future, both compensatory and punitive, both individually and jointly with costs, interest, and attorney's fees.

## STATEMENT OF FACTS

1. Prior to March 2022, Joseph Tabourne was a lawful resident and owner of the Plaintiff's home at 4 Linden Court West Orange, New Jersey.

2. This premise was a marital home for Joseph and Carla until Carla contracted a medical condition requiring treatment from specialists in Minneapolis, Minnesota.

3. Joseph and Carla continue as husband and wife regardless of the necessity of the separation of distance between the two (2) of them as Carla last visited Joseph in the summer of 2021.

4. Plaintiff Joseph Tabourne was on March 27, 2022 a resident patient of defendant Mountainside Psychiatric Hospital in Montclair, New Jersey.

5. On the date of March 27, 2022, Plaintiff Joseph's friends , Douglass Anderson and Gene Wilson contacted the defendant staff of Mountainside Psychiatric Hospital who gained permission from defendants Jeffrey and Christopher to be allowed to visit PLAINTIFF JOSEPH. (See Certification as Exhibit C)

6. Plaintiff's friend and Attorney Eldridge Hawkins on March 27, 2022 contacted the Defendant Hospital Mountainside and asked what the visiting hours were to see his friend Joseph. The John DOE - 10, staff told Joseph's friend and attorney Eldridge Hawkins that visiting hours are only Tuesdays and Thursdays and that he would have to have permission of Chris or Jeff in order to visit or make contact with him. Joseph's friend and Attorney asked if he could talk with Joseph over the phone. Staff at Mountainside indicated

Joseph has no phone. Only if the son agrees for JOSEPH to receive any calls may they facilitate said communication . Joseph's Counsel, Eldridge Hawkins attempted to obtain permission from Jeffrey Tabourne to see or speak to Joseph and said communications left were unanswered and given no response.

7. Plaintiff's said Counsel did on March 28, 2022 send an email (with attachments) to the email address provided by the staff who answered the phone at Mountainside Psychiatric Hospital.

8. The correspondence was sent by the attorney Eldridge Hawkins to Mountainside Hospital attaching and referencing the statements given by his friends Gene Wilson and Doug Anderson and which indicated that Gene found out that the sons and HEAD DOE ONE on behalf of the defendant hospital planned to have JOSEPH released from the hospital to the DEFENDANT SONS who have arranged his Medovac flight to Houston, Texas.

9.When Joseph heard this information, he became upset that his sons were doing this against his will and against his rights and that he did not allow his sons to do that to him. He clearly declared that he wanted to go to his West Orange home.

10. Both witnesses CERTIFIED that Joseph was lucid at that time and that he wanted help in getting him a lawyer to fight for his rights. Wilson indicated that in speaking to Gladys (the nurse) that she indicated that THE MATTER was out of her hands and the hospital was COOPERATING WITH THE DESIRES of his son .

11. Both witnesses found Joseph to be lucid AND DECLARING HIS RIGHTS contrary to his sons' intention to transport Joseph against his will out of New Jersey from his home in West Orange.

12. Douglass Anderson on March 27, 2022 upon being requested by Joseph to call his wife Carla, contacted Carla on the phone and the witnesses observed and heard that Joseph asked Carla to do something legal to prevent his relocation to Houston. Joseph indicated that his feelings and desires were not being respected or considered. He felt like his rights were being violated by his sons.

13. He was upset that decisions were being made for him that did not comport or allow him with his wishes.

14. It was heard that Carla indicated that she would try to apply for legal help.

15. Discussion took place between Joseph and his friends that resulted in Joseph understanding Joseph's psychiatric condition required that he has assistance
with his everyday living circumstances.

16. His friend discussed with him his need to hire staff around the clock to take care of his needs if it is his desire to remain in his West Orange home.

17. Joseph clearly understood and agreed that he needed assistance and would obtain assistance as he was fully financially capable of doing so and that he would prefer to stay where he could communicate with his friend and family than be taking away from who he loves.

18. In spite of Joseph lawyer's communication to Jeffrey and Christopher and the staff of  Mountainside Psychiatric Hospital where Attorney Eldridge Hawkins made it clear that said abduction

out of state was contrary to JOSEHPH'S desire , the defendants Mountainside and its staff cooperated with the sons Jeffrey and Christopher and Medically prepared him for a quiet transport from the hospital by air Medovac to the Defendant Spring Cypress for Defendant's planned residency for the rest of Joseph Tabourne's life (against his will).

19. Plaintiff's Counsel Hawkins implored the Attorneys for Defendants Christopher and Jeffrey to submit all proofs to justify keeping him incommunicado and away from his friend and lawyer and wife.

20. The Advanced Directive reportedly signed by Joseph in the presence of witnesses designated Christopher Tabourne as  his healthcare representative to make care decisions to accept or to refuse treatments. Jeffrey was the alternate. The same paragraph states: "I direct my representative to make decision on my behalf in accordance with my wishes as stated in this document or as otherwise known to him or her".

21. Eldridge Hawkins, Plaintiff's Counsel, made Joseph's wishes quite clear by the messages left in the emails sent which told Jeffrey that the witnesses witnessed Joseph stating HIS DESIRE to not be removed out of New Jersey.(see attached).

22. The Advanced Directive in the Power of Attorney which was signed reportedly by Joseph on 2/15/2021 and  5/20/2021 are subject to revocation by Joseph in periods of lucidity.

23. It is believed that Defendants Jeffrey and Christopher are aware of Joseph's ability to revoke the Power of attorney and which would cause SONS to lose the ADVANTAGE and control over JOSEPH'S

ASSETS as a reason why sons Jeffrey and Christopher kept Attorney Hawkins ability to communicate with Plaintiff Joseph from Attorney Hawkins.

24. Prior to the signing in February 2021 of the two authorizations which entrusted Plaintiff JOSEPH and his life and health as well as financing in the power of his son, Plaintiff Joseph, was well financially sound.

    a. It is the duty of those in whom Joseph reposed his trust, ergo Jeffrey and Christopher, to not violate their trust and to preserve the realty and personality of Joseph and not utilize same for their own personal interests.

    b. Defendant CHRISTOPHER has offered to give JOSEPH'S AND CARLA'S PROPERTY AWAY. (see attached CHERYL EMAIL FORWARDING Christopher's email of April 13, 2022). Upon information and belief, the SON'S actions are motivated to get people to be quiet and not contest their authority.

    c)Upon information and belief, said DEFENDANTS-sons in their trust capacities have violated that trust sufficiently that a Court with or without Joseph'S ABILITY TO CONSULT WITH COUNSEL HAS AUTHORITY to terminate the Power of Attorney and the Advanced Directive and to require the reimbursement all moneys and personality squandered, given to themselves, or given to others.

25. To this point of filing this complaint none of the defendants have allowed Plaintiff Carla (the wife of Joseph Tabourne) nor the Attorney Eldridge Hawkins to speak with him or anyway to communicate with him. Prior to the complaint being drafted,

Plaintiff Counsel sent communications to the email addresses provided by the staff at spring Cypress to request that Joseph be given his lawyer's communications. Said Communications upon information and belief never reached Joseph Tabourne as Joseph never communicated again with his friend and lawyer Eldridge Hawkins.

26. Prior to March 27, 2022 and on or about the 28th day of March, 2022, defendants Jeffrey and Christopher along with defendants VERONICA JENSON, Head Doe, John Does 1-3 as employee agents of Mountainside Psychiatric Hospital, Montclair jointly arranged for Plaintiff Joseph to be Medovac air transported from New Jersey to Texas while under notice that it was against the will and desire of Joseph Tabourne. THIS WAS COORDINATED BY R.N. AKIA AT DEFNDANT INSTITUTION, SPRING CYPRESS.

27. The advanced directive given by Plaintiff Joseph to the sons in February 2021 specifically required that prior to the combined advanced directive for healthcare taking effect, that "THE PHYSICIAN" who has the duty of primary care over Joseph must confirm a determination that Joseph Tabourne has become unable to make his own healthcare decisions.

28. The said Advanced Directive also required that the healthcare representatives, namely Christopher and Jeffrey Tabourne, "make decisions on my behalf in accordance with my wishes as stated in this document, or as otherwise known to him or her".

29. Plaintiff Counsel emailed to defendants Christopher and Jeffrey Tabourne and defendants Mountainside Psychiatric hospital and Staff, communications indicating certifications by two (2) friends who visited Joseph on March 27, 2022 that Joseph was lucid

and clearly expressed his being upset with the decision made by his sons which was against his desire to stay in New Jersey with whatever treatment was to take place.

30. In spite of both defendants Christopher and Jeffrey and staff at Mountainside Psychiatric Hospital knowing Joseph's desire to not leave New Jersey. They all agreed WITH each other to arrange for Medovac to air transport plaintiff Dr Joseph Tabourne from his home state of New Jersey to Texas where at present, defendant Spring Cypress continues to prohibit communications with plaintiff Joseph by plaintiff wife Carla and or friend and attorney Eldridge Hawkins without consent of Jeffrey and Christopher Tabourne.

    A. Said consent has never been given since the plan to keep Joseph incommunicado and transported out of the state of New jersey was discovered.

    B. PLAINTIFF'S COUNSEL HAS REPEATEDLY REQUESTED TO SPEAK TO JOSEPH.

    C. PLAINTIFFS COUNSEL'S REQUESTS HAVE BEEN CONSISTENTLY IGNORED.

    D. DEFENDANTS DID NOT OBTAIN THE NECESSARY SINE QUA NON AUTHORITY TO HAVE THE ADVANCE DIRECTIVE activated prior to taking JOSEPH  AGAINST HIS WILL FROM HIS HOME STATE TO TEXAS.

    E. DOCUMENTS SENT FROM ACTING COUNSEL FOR DEFENDANT SONS (attached as ex A) ARE THE DOCUMENTS PUPORTEDLY UPON WHICH DEFENDANT SONS RELY IN THEIR ACTIONS. Same are deficient to have given defendants documented support to have activated the ADVANCED DIRECTIVE (Ex B) in that the wording of the advanced directive required determination by Joseph's PRIMARY CARE PHYSICIAN RESPONSIBLE FOR HIS treatment that JOSEPH IS NO LONGER ABLE TO HANDLE HIS OWN AFFAIRS along with whatever other required DOCUMENTATION. SAME DID NOT EXIST PRIOR TO DEFENDANTS TAKING JOSEPH FROM NEW JERSEY TO TEXAS AGAINT HIS WILL.

    F. That which was sent was:

1) March 16, 2022 letter directed to 'TO WHOM IT MAY CONCERN. Said letter was signed by Veronica Jensen whose credentials listed : DNP;MSN, APNC-BC . SAME INDICATES A NURSE AND NOT A PHYSICIAN . Said document did NOT state what was required to be stated by the Advanced Directive in order for said Advanced Directive to be able to take effect.

2) The other attached pages included mountainside (attached as exhibit D) p17of17 which identified the Primary Care provider as BRIAN MALONE and the Admitting Provider as Jonathan Hertz, M.D.

3) P 7 OF 17 DATED 3-18-2022 indicated "able to engage in 1:1. Denies wanting to hurt himself or others … discharge plan is referral back to Greenhills subacute unit. (THIS IS IN WEST ORANGE).

4) p 3 of 17, behavior is appropriate, needing reorientation to time and place.

5) 3-25-2022 from Nurse Veronica Jensen to R.N. Akia (Spring Cypress) fax transmittal page 1 of 6 re Physicians report (forms).

6) page2 of 6 2022/03/23 Physician's report with primary diagnosis dementia Alzheimer type with behavioral disturbance.

7) page 3 of 6 indicates under mental condition at par "F" "able to follow instructions" and under par "I", "able to communicate needs".

8) page 4 of 6 indicates a check for "DEMENTIA" and signed by nurse JENSON AND an unidentified physician on 3/25.

9) page 5 of 6, is admission orders signed by nurse JENSON WITH THE SIGNATURE RESEMBLING THE SIGNATURE ON THE PREVIOUS SIGNED DOCUMENT IN THE "PHYSICIAN" SPOT.

10) PAGE 6 OF 6 AGAIN SIGNED BY NURSE Jenson.

11) The last page in the packet was an April 4 , 2022 and is a letter "to whom it may concern " wherein the NURSE PRACTIONER (not the primary care physician) CONCLUDES :"HE IS NOT CAPABLE TO MAKE MEDICAL OR FINANCIAL DECISIONS . SAME IS A NET OPINION OBVIOUSLY DRAFTED FOR THE PURPOSES  OF THIS LITIGATION , WHICH DECIDES NOTHING . Same is undersigned by

a Dr HAROLD WILLS , also , NOT identified as JOSEPH'S PRIMARY
CARE PHYSICIAN RESPONSIBLE FOR HIS CARE AND TREATMENT.
12) None of the documents were signed by Dr TABOURNE'S OWN
PRIMARY CARE and TREATING PHYSICIAN.

31. The actions of all defendants are violative of a multitude of
criminal statutes prohibiting said actions. In addition to the
constitutional protections and statutory causes of action giving
relief because of said acts which amounted to ultra-vires actions
of all parties-Defendants and a misuse and abuse of the Power of
Attorney and Advanced Directive for healthcare designed for the
benefit of Plaintiff Joseph, same has been used by defendants for
the defendants own personal monetary benefits and with complete
disregard of plaintiff Joseph Tabourne's desire and constitutional
and civil rights.

32. Attached are several documents (Exhibit F) provided by
defendant counsel which are attached as requested by defendants'
counsel and incorporated into this complaint for the truth
attempted to be known, BUT NOT as adopted admission by plaintiffs.

33. Defendants JEFFREY and CHRISTOPHER, in April 2022 have been
seen emptying out personal property from the marital home at 4
Linden Court into a truck which took same from the home.

34. No declaration required by law has happened to allow Plaintiff
Joseph to be UNVOLUNTARILY ADMITTED AGAUINST HIS WILL INTO ANY
CARE FACILITY.

34. NO COURT PROCEEDING HAS TAKEN PLACE WHEREIN A LEGAL
DETERMINATION HAS BEEN MADE THAT:

    a) PLAINTIFF JOSEPH IS INCAPABLE OF MAKING HIS DESIRES KNOWN
    b) Plaintiff Joseph is incapable of handling his own affairs

c)that JOSEPH IS INCAPABLE OF REVERSING AND VACATING THE POA AND ADVANCED DIRECTIVE.

d) That PLAINTIFF JOSEPH'S DISABILITY disallows him from EXPRESSING HIS DESIRES AS HE IS ALLOWED TO DO IN HIS ADVANCED DIRECTIVE.

e) That JOSEPH EXPRESSED HIS DESIRES TO NOT BE REMOVED FROM NEW JERSEY AGAINST HIS WILL BY HIS SONS.

f) Regardless OF Joseph's PRESENT MENTAL CONDITION, HIS CAREGIVERS ARE VIOLATING THE TRUST HE PLACED IN HIS SONS AND ARE VIOLATING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING TO WHICH JOSEPH IS ENTITLED AND BECAUSE OF SAME ARE NO LONGER WORTHY TO BE HIS POWER OF ATTORNEYS OR HIS FINANCIAL AFFAIRS OR HIS HEALTH.

g) IT IS IN THE BEST INTEREST OF JOSEPH THAT A COURT APPOINTED PSVCHIATRIST EXAMINE PLAINTIFF JOSEPH TO RENDER TO THE COURT A FULL PSYCHIATRIC REPORT TO ASSIST TH COUT IN MAKING THE ABOVE DETERMINATIONS.

h) That ANY OF DEFENDANTS HAD THE POWER OR AUTHORITY TO PREVENT JOSEPH FROM INTERACTING WITH ANYONE AND SPECIFICALLY NOT HIS WIFE, CARLA, AND HIS PERSONAL ATTORNEY ELDRIDGE HAWKINS and that the actions of all defendants having done so, was without any legal authority and must immediately cease.

35)UPON INFORMATION AND BELIEF THE KNOWN DEFENDANTS R.N. AKIA AND VERONICA JENSON WERE THE PRIMARY AGENTS OF DEFENDANT SPRING CYPRESS WHO AGREED AND CONSPIRED WITH EACH OTHER ON BEHALF OF THER EMPLOYERS' PRINCIPALS TO KEEPMPLAINTIFF JOSEPH INC9OMMUNICADO AND TRANSFER HIM INTO TEXAS AGAINST HIS WILL AND WITHOUT KNOWLEDGE TO HIS wife Carla.

## COUNT ONE

## N.J. CONSTITUTION VIOLATION OF ARTICLE 1, PARAGRAPHS 1, 6, 7, 10,18,19,22

## UNITED STATES CONSTITUTION, AMENDMENTS I, IV, V, XIV

## 42U.S.C.A. 1981, 1982, 1983, 1985, 1986, 1988

1. Plaintiff repeats the allegations of all prior and hereafter stated paragraphs as if fully restated herein.

2. Defendants wrongfully restricted plaintiff's freedom , liberty and ability to enjoy life and pursue happiness .

3. Plaintiff is a victim who is not allowed his rights by Defendants to communicate with his wife of over 30 years or his lawyer friend.

4. Upon information and belief said incommunicado status was intentionally done to prohibit Joseph from having the opportunities to consult with Counsel and to pursue those rights that  were guaranteed to Joseph by the New Jersey Constitution ' Article 1 , 5,7, 18 and United States Constitution, amendments 5, 14

5. This cause action is allowed under Peper v. Princeton, 77 N.J. 55 (1978).

6.  As a consequence of defendant's actions, jointly, severally, and conspiratorially, with themselves and others, plaintiff has been harmed, damaged, financially, physically, and psychologically.

7. As a consequence of Defendants acts committed individually, jointly, and severally by unlawful conspiracy aided and abetted by each Defendants, one with each either, plaintiff Joseph was caused to:

a. Lose his property right to enjoy his home and personalty in violation of both the U.S. Constitution 5th; 14th Amendment; N.J. Constitution Article I, and thusly in violation of 42 USCA 1981, 1982, 1983, 1985, 1986, 1988.

b. Lose his freedom in violation of US Constitution, Amendments I, V, XIV, NJ Constitution Article I, Paragraph 1.

c. Have his privacy violated in violation of NJ Constitution Article I, Paragraph 1, 5, 7, 8, 9.

d. Be unlawfully imprisoned without a hearing in violation of U.S. Constitution, Amendment IV, V, VII. (<u>Morrisey v. Brewers</u> 408 US 471 1972)

e. Be deprived of his equal protection and due process in violation of above.

f. Be deprived of his substantive due process rights in violation of above and NJ Constitution Article 1, Paragraph 18 and U.S. Constitution Amendment I.

g. Be deprived of his freedom of speech and ability to petition for redress of grievances in violation of above.

h. Be deprived of his Constitutional right of freedom of movement and association in violation of above.

i. All Defendants are care givers who all had a sworn duty to stop a deprivation of Plaintiff's Statutory and Constitutional Rights done under Color of State Law and did not. Thus, these Defendants are liable to Plaintiff under 42 USCA 1986.

j. All Defendant's agreed and conspired to deprive Plaintiff of his equal protection, substantive due process rights, freedom rights, property rights, rights to complain, grieve and petition

government for redress of grievances which violated 42 USCA 1981, 1982, 1983, 1985, 1986, 1988.

    **WHEREFORE**, plaintiff requests judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately, interest and attorney's fees.

## COUNT TWO

## WRONGFUL ARREST-IMPRISONMENT

1. Plaintiff repeats the allegations of the aforementioned and hereafter paragraphs as if fully restated herein.

2. All defendants agreed and conspired that Plaintiff Joseph would no longer be able to communicate to his wife or his friend and lawyer Eldridge Hawkins.

3. Upon information and belief, this agreement was effectuated to enable Joseph's sons Christopher and Jeff to continue to be able to control Joseph's money and personality so that the institution defendants could continue to benefit by the financial reward paid by the sons who had the appearance of legal authority as long as long the wrong persons do not communicate with Joseph to assist Joseph in replacing said authority previously given to the son.

4. Plaintiff counsel has great concern that which has happened to his friend and client Joseph has happened to other unsuspected aged and infirmed persons who no longer have access to their family and friends.

5. Plaintiff Counsel intents to engage in discovery to find out whether criminal enterprises exist where in aged and infirmed persons are taking across state lines or not to these defendants

whose duty is to give care to aged and infirmed but in so doing they keep them in prison so that no one disable to find out whether they are there lawfully, unlawfully or against their will which might interfere with the beneficial economic game because of the acceptance of the aged and infirmed who have been placed in each entity care. Said kidnapping interstate is ground for a federal RICO criminal enterprise lawsuit should discovery determine same.

6. Both Plaintiffs Carla and Joseph have endured severe emotional distress because of the of plaintiff Joseph to make communications endorsed the ability to determine whether Joseph is properly being giving the care he deserves.

**WHEREFORE,** plaintiff requests judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately interest and attorney's fees.

<u>**COUNT THREE**</u>
<u>**VIOLATION OF N.J.S.A. 10: 5-4 f, N.J.S.A. 10 1-2, PLACE OF**</u>
<u>**PUBLIC ACCOMMODATION**</u>
<u>**ADA TITLE 3 as well N.J.S.A 10:1-4 N.J.S.A 12:5 (f)**</u>

1. Plaintiff repeat's the allegations of all paragraphs herein as if fully restated herein.

2. All defendants have care givers with duty bound to not deprive plaintiff Joseph of his rights to which he was otherwise entitled.

3. Said actions above by defendants individually, jointly, severely and by agreement violated plaintiff rights under the for-mention ADA NJSA place of public recommendation law by depriving plaintiff of his constitutional and right stated hearing above.

18

4. Plaintiff Joseph was intitle to receive the full benefit given by law and trusted agreement without losing otherwise constitutional rights and benefits to which he would not be intitled of said benefits.

5. As a consequence of defendants high style of the benefits from plaintiff Joseph both Joseph and his wife Carla have been harmed and damaged in the lost the friendship and love they would otherwise enjoy each other because of said violation of their rights.

**WHEREFORE,** plaintiff requests:

A. judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately interest and attorney's fees.

B. Emergency restraint and injunctive relief directing defendants to cease and decease from prohibiting plaintiff Joseph to have contact with his wife Carla and his attorney Eldridge Hawkins.

C. Any other relief this court deems just

**COUNT FOUR**

**VIOLATIONS OF N.J. CRA [{N.J.S.A. 10:6-2 (c)]**

1. Plaintiff repeats all prior and following paragraphs as if fully restated herein.

2. Defendant's actions done under color of State Law violated Plaintiffs, substantive due process, Constitutional and Statutory rights and also N.J. Court Rules which caused harm and damage to Plaintiff herein.

WHEREFORE, plaintiff requests judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately interest and attorney's fees.

## COUNT FIVE
## RECKLESS AND INTENTIONAL AND FLECTION
## OF SEVERE EMOTIONAL DISTRESS

1.   Plaintiff Carla repeat's all of the aforementioned paragraphs as if fully restated herein.

2. Defendants individually, jointly and severely by agreement engaged in actions which created an extreme style for Joseph and a similar causative extreme distress for his wife Carla who is unable to communicate with him.

3. Plaintiff Carla is also in receipt of information that Defendants Jeffrey and Christopher have in reckless disregard of Plaintiff's rights began throwing out items belonging to the two of them from family's resident at Linden Court, West Orange. Same also has created extreme emotional distress to plaintiffs.

**WHEREFORE**, plaintiff requests judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately interest and attorney's fees.

## <u>COUNT SIX</u>

## <u>MALICIOUS INTERFERENCE WITH</u>

## <u>PLAINITFF'S BENEFICIAL ECONOMIC CONDITION</u>

1. Plaintiff repeats the allegations of all paragraphs herein as if fully restated herein.

2. Plaintiffs no longer have access to their assets. Defendants Jeffrey and Christopher have prevented access to the information needed to insure that both Plaintiff Properties are extended. Plaintiff desire and request in accountant and access to the property Linden court West Orange in the entirely of the access place in trust into the trust and care of Jeffrey and Christopher to insure what said have been not too terribly

3.   As a consequence of which Plaintiff was permanently injured and caused harm.

**WHEREFORE**, plaintiff requests :

    A. judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately interest and attorney's fees.

    B. Emergency restraint an injunctive relief ordering defendants Jeffrey and Christopher to cease and decease from disallowing plaintiff Carla from inspecting and visiting the family home at 8 Linden Court, West Orange with attorney Eldridge Hawkins.

    C. Rendering plaintiff Joseph Tabourne and plaintiff Carla Tabourne an accounting by Defendants Jeffrey and Christopher with regard to all transactions, expenditures, distributions and gifts engaged in out of the assets of Joseph and Carla Tabourne plaintiff hearing and justification for any expenditure not authorized by

Josephh and specifically against the desire and will of Joseph
such as the expenditure of the Medovac air transport by Defendants
sons and the defendants Mountainside Psychiatric Hospital
personnel who it is believed assisted in the arrangement of the
Medovac transportation.

## COUNT SEVEN
## BREACH OF FIDUCIARY DUTY

1. Plaintiff repeats the aforementioned paragraphs as if fully
restated herein.

2. Plaintiff Joseph, placed into the Advanced Directive the
language that Joseph's desires were at all times to be given
compliance.

3. SON's Christopher and Jeffrey have violated that clause which
gives grounds for a request to the Court to declare the ADVANCED
DIRECTIVE AGREEMENT and POWER OF ATTORNEY -- previously entered
into in good faith by Joseph with his sons -- MATERIALLY
BREACHED BY DEFENDANTS SONS taking Joseph out of New Jersey
AGAINST HIS WILL.

4. Said actions by SONS ALSO DEMONSTRATED A BAD FAITH BREACH OF
THEIR FIDUCIARY DUTY THEY OWED TO THEIR FATHER, JOSEPH, by their
POA'S.

5. Said duty of the SONS in their positions to their Father was
one of trust, where they owed Joseph a high degree of care in
PROTECTING HIS PROPERTY AND PERSON.

6. They violated that high degree of care giving this Court the authority to first speak to Joseph and find out Joseph's desires and to declare their POA'S MATERIALLY BREACHED AND TERMINATED.

7. As a consequence of Defendants' actions, PLAINTIFF JOSEPH HAS BEEN HARMED, DEPRIVED OF HIS FREEDOM, ASSETS, AND  FREEDOM TO ASSOCIATE WITH WHOM HE PLEASES WHENEVER HE PLEASES.

8. Wherefore, Plaintiff Joseph Requests this Court

   A. Declare the Power of Attorney and Advanced Directive materially breached;

   B. Direct SONS to give a complete accounting to the plaintiff and the Court of Joseph's assets from the beginning of the POA's in February 2021 to present and demonstrate where all assets of Joseph have been transferred or given disposal.

   C. Appoint a Court appointed independent Psychiatrist to examine Joseph and assist the court in determinations necessary to be made in this matter, which costs may presently be paid out of Joseph's very plentiful estate (if it has not been completely destroyed).

   D. Grant Plaintiff Joseph damages for spoilage of Joseph's estate by SONS found by this Court to have taken place.

   E. Grant Joseph his freedom

   F. Such other relief as this court finds is just and reasonable.

## COUNT EIGHT

## FALSE IMPRISONMENT, INVOLUNTARY COMMITMENT

1. Plaintiffs repeat all prior and hereafter paragraphs as if fully restated herein.

23

2. Plaintiff Joseph had been treated as if he had been involuntarily committed without following the requirements of the law.

3. Joseph was falsely imprisoned by all defendants against his will.

4. No procedures were alleged to have been followed, and none were followed to authorize the commitment of Plaintiff Joseph to the involuntary seclusion and isolation of an institution without his having rights accorded to him.

5. Even with involuntary commitment Plaintiff Joseph would have been entitled to a lawyer with whom he would be entitled to consult and who could place his position before the Court and contest the forced incarceration against his will.

6. Defendants have NOT attempted to have a Court declare the Defendants' rights to TAKE, KEEP, and HOLD Plaintiff Joseph against his will and without any civil or constitutional rights accorded to him, such as consulting with counsel, bring free to leave the institution if that is his desire.

7. Said rights have been denied to Plaintiff Joseph resulting in the UNLAWFUL AND FALSE IMPRISONMENT OF PLAINTIFF JOSEPH which deprived him of his Constitutional Rights of LIBERTY and FREEDOM OF ASSOCIATION AND THE PURSUIT OF HAPPINESS.

8. Said lack of due process incarceration violated the rights of PLAINTIFFS as outlined in the statutory and constitutional law cited in "In Re R.S. , 263 N.J.Super 428, 432 (APO DIV.1993)".

9. Defendants, Mountainside Hospital and Spring Cypress and their Head Does and John Does defendants have by their actions of keeping Plaintiff Joseph incommunicado and incarcerated have facilitated the DEFENDANT SONS ABILITY TO VIOLATE THEIR LEGAL POA AUTHORITIES TO ALLOW SONS TO PLUNDER AND STEAL AND UNLAWFULLY DISPOSE OF PLAINTIFF's property, under cover of state law authorizing POA and ADVANCED DIRECTIVE.

10. As a consequence, both Plaintiffs have been harmed and damaged and Plaintiff Joseph has forever been denied the time of life WHEN HE WAS ENTITLED TO BE FREE AND TO ENJOY HIS LAST YEARS IN LIFE by Defendants individually, severally and by agreement, joint actions.

11. Upon information and belief Plaintiff Joseph expressed his desire to be free to the John Doe staff at both institutional defendants who ignored his desires and followed the directives and desires of Defendant SONS.

12. Same appears to be the custom and practice of both Defendant Institutions, which is not just limited to Plaintiff Joseph, but the custom of the institutions to keep those residents incommunicado simply at the request of the caregiver who placed the resident-patient in their care.

13. Such practice is CONTRARY TO THE CONSTITUTIONS AND THE LAWS ABOVE CITED AND POSSIBLY IN VIOLATION OF MULTIPLE RESIDENT-PATIENTS' RIGHTS.

14. Plaintiffs reserve the right to engage in discovery and to amend these pleadings to amend to include a CLASS ACTION or RICO TYPE OF PROCEEDING TO PROTECT OTHER SIMILARLY SITUATED RESIDENTS

OF BOTH INSTITUTIONS WHO ARE BEING HELD AGAINST THEIR WILL, INCOMMUNICADO WITHOUT PROPER LEGAL PROCESS including the right to consult with counsel of THEIR CHOICE.

**Wherefore**, Plaintiffs Request judgement for monetary damages, both past and future, both compensatory and punitive with costs interest and attorney's fees.

### COUNT NINE
### RECKLESS, INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

1.   Plaintiffs repeat the allegations of all paragraphs herein as if fully restated herein.

2.   As a consequence of all Defendant's actions done, negligently, purposely, wantonly, recklessly, intentionally, Plaintiffs have been inflicted by their coerced non communication which is constant reminder of the stress noy knowing the status or condition of the spouse

3.   Said emotional distress has caused them to have concern about their own and spouse's state of weakened immune systems which constantly gives trepidation of the consequences of what condition the other is in .

4. Both Plaintiffs been damaged and harmed.

WHEREFORE, Plaintiffs request judgment for monetary damages, both past and future, both compensatory and punitive with costs, both jointly and separately interest and attorney's fees.

### COUNT TEN

### PLAINTIFFS' 28 USC 2201,ET SEQ , FRCP57 DECLARATORY JUDGEMENT
### AND EMERGENCY RESTRAINT AND INJUNCTIVE RELIEF

1. BOTH PLAINTIFFS, repeat the aforementioned paragraphs as if fully restated herein.

2. The issues before this court are justiciable and needed to be quickly adjudicated to prevent further unlawful and non-reversible harm to plaintiffs.

3. Presently, Plaintiff Joseph is being held captive without legal authority by defendants who all have agreed that Plaintiff Joseph shall not be able to communicate to his wife, Plaintiff Carla, and his longtime friend and Attorney Eldridge Hawkins.

4. The evidence has demonstrated that the Defendant sons , Jeffrey and Christopher  are cleaning out the marital home as if preparing it for sale so Joseph will not have a home to which he may return.

5. Defendant son Christopher emailed to Joseph's niece an offer to give her the gifts that were given to both Joseph and Carla.

6. The condition under which the advanced directive may take effect has not happened and without same happening, defendants are all doing whatever these sons desire.

7. Joseph has been determined capable of expressing his wishes and desires, but regardless, the defendants, each and all transported him against his will from his NJ domicile to Texas for treatment where he did not want to go.

8. It is of great import that this court immediately issue an order commanding the staff at Defendant Spring Cypress in Texas and sons Joseph to have Joseph presented before this court on an immediate zoom hearing in order to gain whatever information to make whatever

determinations this court must make in the interest of justice in this matter.

9. Irreversible harm could be caused to the Plaintifs' health, civil rights and property should this court not act immediately.

Wherefore, plaintiffs pray this court to:

A. Order the immediate presentation of Plaintiff Joseph before this court by all defendants who are presently in the positions of his caregivers (spring cypress staff, sons Christopher and Jeffrey).

B. Order turnover of a copy of these pleadings and order to Plaintiff Joseph Tabourne.

C. Order the defendants to immediately facilitate Plaintiff Joseph calling his wife , Carla , 612-384-4607 and his friend and lawyer Eldridge Hawkins, 973-676-5070.

D. Directing defendants to show cause why the court should not declare the transportation of Joseph from New Jersey to Texas unlawfully and direct the immediate return of Joseph to his New Jersey home at 4 Linden Court, West Orange at defendants' expense.

E. Directing defendants to cease and desist in the disposal of Joseph's and Carla's property, both real and personal, until the final hearing of this court on the legal issues required to be directing Defendants Christopher and Jeffrey to make an accounting to the court with regard of all disposals, investments, sales of any and all of plaintiff's property since the POA's took effect in February 2021, directing the sons to demonstrate to this court with the documentary proof from records of the investment and banking institutions over which the sons had been given control by Plaintiff Joseph through any means and to substantiate any and all

distributions from plaintiff's joseph's accounts for $175.00 or more.

F. Directing the defendants to allow communications to reach Joseph and for Joseph to send out communications.

G. Directing the defendant sons to show cause why they "imprisoned" their father, Joseph, and disallowed further communications between him and the world outside of the institutions where sons gad him placed.

H. Directing Defendant Spring Cypress' executive officer to show cause why the Defendant Spring Cypress disallowed Plaintiff Joseph communications with the outside world and to explain if that is the policy of Spring Cypress to keep residents incommunicado if that is the desire of the caregivers who brought he residents to their premises.

I. Directing defendants to show cause under what legal principals they have engaged in their actions as alleged in the complaint and in the attached verifications.

J. Any and all other relief that this court considers just and reasonable (including attorneys' fees).

## **VERIFICATION**

ELDRIDGE HAWKINS UNDER KNOWLEDGE OF PENALTIES FOR PERJURY , DOES VERIFY THE ABOVE STATED FACTS TO BE TRUE AND CORRECT TO THE BEST OF HIS KNOWLEDGE AND BELIEF .

/S/Eidridge Hawkins, Esq.
Eldridge Hawkins